IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LORIN K. WONG, | ) CIVIL NO. 09-00279 JMS/LEK |
| | ) |
| Plaintiff, | ) ORDER DENYING LABORERS' |
| | ) INTERNATIONAL UNION OF |
| vs. | ) NORTH AMERICA, LOCAL 368, AFL- |
| | ) CIO'S MOTION TO DISMISS AND |
| HAWAII MEDICAL CENTER- | ) GRANTING ITS MOTION FOR |
| WEST LLC, formerly known as St. | ) SUMMARY JUDGMENT |
| Francis Medical Center-West, and | ) |
| LABORERS' INTERNATIONAL | ) |
| UNION OF NORTH AMERICA, | ) |
| LOCAL 368, AFL-CIO, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER DENYING LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 368, AFL-CIO'S MOTION TO DISMISS AND GRANTING ITS MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Lorin K. Wong ("Plaintiff"), formerly an x-ray technician

employed at Hawaii Medical Center-West LLC ("HMC" or "Employer"), alleges

claims against HMC for breach of its collective bargaining agreement in

suspending and discharging Plaintiff, and against Laborers' International Union of

North America, Local 368, AFL-CIO ("Union") for breach of its duty of fair

representation during Plaintiff's suspension from employment and subsequent

termination.  Currently before the court is Union's Motion to Dismiss or in the

Alternative for Summary Judgment ("Union's Motion").  In support of its motion

to dismiss, Union argues that the court lacks subject matter jurisdiction under the

doctrines of mootness, ripeness, and exhaustion and that Plaintiff fails to state a

claim for which relief can be granted.  In the alternative, Union argues that it is

entitled to summary judgment on the duty of fair representation claim because it

satisfied its statutory obligations to Plaintiff.  For the following reasons, the court

DENIES Union's motion to dismiss and GRANTS the motion for summary

judgment.

## II.  <u>BACKGROUND</u>

**A.     Factual Background**

From May 1990 through May 16, 2008, HMC employed Plaintiff as

an x-ray technician.  Wong Decl. ¶ 3.  During Plaintiff's employment, Union

exclusively represented Plaintiff pursuant to a collective bargaining agreement

("CBA").  *Id*. ¶¶ 4-5.  The CBA in effect in May 2008 contained a binding

grievance and arbitration provision, which allowed arbitration only at Union's

option.  Union's Concise Statement of Material Facts ("Union's SMF") ¶¶ 2, 6.[1]

On May 7, 2008, based on three eyewitness accounts, HMC

---

[1] For purposes of this Order, Plaintiff does not dispute many of the facts set forth in
Union's SMF.  Plaintiff's Concise Statement of Material Facts 2.  Where Plaintiff does not
dispute a particular fact, the court cites directly to Union's SMF.

suspended Plaintiff for seven days pending discharge for violating a workplace policy on May 6, 2008 against sleeping or appearing to sleep on the job. Wong Decl. ¶ 6; Union's Exs. 2A, 2B, 2C. On May 8, 2008, Plaintiff contacted Union representative Toni L. Figueroa ("Figueroa") requesting Union representation in challenging his suspension. Wong Decl. ¶ 7. In speaking with Figueroa, Plaintiff detailed his work activities on May 6, 2008 and provided Union with the names of several co-workers to account for his whereabouts during the time period when HMC alleged that he had been sleeping. *Id.* On May 9, 2008, Union filed a grievance against HMC on behalf of Plaintiff and requested documents relating to Plaintiff's suspension, information relating to HMC's investigation, a copy of HMC's house rules/standards of conduct, and Plaintiff's personnel file. Union's SMF ¶¶ 7-8. Union then sought a short extension of the grievance procedure in order to review the materials from HMC. *Id.* ¶ 9.

On May 16, 2008, Union and HMC met for a Step 3 Grievance meeting. Wong Decl. ¶ 13. At the meeting, Union did not present witness statements supporting Plaintiff, challenge HMC's witnesses, or present Plaintiff's account of his activity on May 6, 2008. *Id.* Also on May 16, 2008, Union and HMC agreed to suspend the time limits set by the CBA for proceeding to arbitration. Union's SMF ¶ 10. That same day, HMC terminated Plaintiff's

employment.  Wong Decl. ¶ 14.

On August 27, 2008 and again on October 1, 2008, HMC responded to Union's May 9, 2008 request for information about Plaintiff's suspension and termination.  Union's SMF ¶¶ 11-12.  HMC informed Union that it had no records of any disciplinary actions or terminations taken against other employees for sleeping or appearing to sleep on the job.  *Id.*  Following another request for information from Union, however, HMC wrote Union on October 29, 2008 and identified four disciplinary acts relating to employees sleeping on the job; in each of these cases, two of which occurred before Plaintiff's termination, HMC reported that the disciplined employees were terminated or had resigned.  *Id.* ¶ 14.  Based on its review of this information from HMC, Union decided not to arbitrate Wong's grievance.  *Id.* ¶ 15.  On December 22, 2008, Figueroa sent a letter to Wong stating that after conducting an investigation, "[Union does] not believe there is sufficient proof of a violation of the Collective Bargaining Agreement" and that "no further action will be taken in connection with the above referenced grievance."  Union's Ex. 11.

Plaintiff subsequently asked Union to reconsider its decision not to arbitrate.  Wong Decl. ¶ 18.  In a January 20, 2009 letter to Union, Plaintiff's counsel denied that Plaintiff had been sleeping, provided an account of Plaintiff's

work activity on May 6, 2008, and pointed out the bias of the three eyewitnesses against Plaintiff.  Union's SMF ¶ 17; Union's Ex. 12.  In later letters sent to Union on January 22, 2009, February 13, 2009, and February 17, 2009, Plaintiff's counsel informed Union that unlike in the case of Plaintiff's termination, HMC had used "progressive disciplinary measures" -- including oral and written warnings -- against another HMC x-ray technician, Maxwell Bartlett ("Bartlett"), for sleeping on the job.  Pl.'s Exs. J-L.  In addition, Plaintiff's counsel stated that HMC breached the CBA by terminating Plaintiff without investigating or allowing Plaintiff an opportunity to respond to HMC's allegations pre-termination.  Pl.'s Ex. K.

On May 14, 2009, Plaintiff met with Union's Executive Board regarding Plaintiff's request for reconsideration.  Union's SMF ¶ 18.  The following day, Plaintiff's counsel faxed Union a copy of Bartlett's declaration, which states that Bartlett and another HMC x-ray technologist, Thomas Owens ("Owens"), received multiple oral and written warnings for sleeping on the job.  *Id.* ¶ 19; Pl.'s Ex. G.

In light of this information, on May 19, 2009, Union wrote HMC a letter pointing out the contradiction between Bartlett's declaration and HMC's October 29, 2008 letter stating that HMC terminated or allowed resignation of the

employees accused of sleeping.  Union's SMF ¶ 20.  Union requested that HMC

provide employment files for Bartlett and Owens, all documents verifying or

contradicting the Bartlett declaration, and all documents verifying the accuracy of

HMC's October 29, 2008 statement that employees accused of sleeping were

discharged.  *Id*.  Union repeated this request for information in a letter to HMC

dated June 8, 2009.  Union's SMF ¶ 21.

      On June 18, 2009, Plaintiff filed his Complaint in this court against

HMC and Union.  One week later, on June 25, 2009, Union informed Plaintiff that

Union's Executive Board had "reconsidered its previous decision not to arbitrate"

and that Plaintiff's grievance would proceed to arbitration consistent with the terms

of the CBA.  Union's Ex. 17.  On July 6, 2009, Union informed HMC of its intent

to arbitrate Plaintiff's grievance; arbitration is currently scheduled to begin

October 15, 2009.  Union's SMF ¶ 26; Union's Exs. 22, 23.

**B.**    **Procedural Background**

      Plaintiff's June 18, 2009 Complaint alleges claims pursuant to Section

301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, against

HMC for breach of contract (Count I), and against Union for breach of its duty of

fair representation (Count II).

      Prior to Plaintiff's filing of the Complaint, HMC entered bankruptcy.

Union's Exs. 20, 21.  An automatic stay is currently in place as to claims against HMC.  Doc. No. 4.

On August 14, 2009, Union filed its Motion.  On September 9, 2009, Plaintiff filed an Opposition, and Union filed a Reply on September 17, 2009.  A hearing was held on October 5, 2009.

### III.  STANDARDS OF REVIEW

**A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.  Ripeness and mootness are questions of subject matter jurisdiction properly raised under Rule 12(b)(1).  *Gemtel Corp. v. Cmty. Redevelopment Agency*, 23 F.3d 1542, 1544 n. 1 (9th Cir. 1994) (noting that ripeness is properly challenged under Rule 12(b)(1)); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (holding the mootness is properly raised in a motion to dismiss under Rule 12(b)(1)).  The court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

The moving party "should prevail [on a motion to dismiss] only if the

7

material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation signals omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack under Rule 12(b)(1), such as the case here, the court may dismiss a complaint when the facts that would give rise to its subject matter jurisdiction are disputed. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In a factual attack, the court examines the truth of the allegations invoking the court's jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself" the existence of subject matter jurisdiction. *Thornhill*, 594 F.2d at 733. Thus, in a factual attack on this court's jurisdiction, this court may accept and evaluate evidence beyond the complaint to determine whether jurisdiction exists, without converting the motion to dismiss into a motion for summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill*, 594 F.2d at 733.

On the issues of ripeness and mootness, "[i]t is the burden of the complainant to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute."  15 Moore's Federal Practice § 101.73[1] (2005); *White*, 227 F.3d at 1241.  In a mootness inquiry, the complainant bears a particularly "heavy burden."  *Los Angeles County v. Davis*, 440 U.S. 625, 645 (1979) (citations and quotations omitted).

## B.    Motion for Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

   "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

///

# IV.  DISCUSSION

Union raises a number of arguments why the claim against it should be dismissed, including (1) lack of subject matter jurisdiction because the claim is unripe, (2) lack of subject matter jurisdiction because the claim is moot, and (3) failure to state a claim upon which relief can be granted.  In the alternative, Union argues for summary judgment on the basis that Union met its duty of fair representation.

## A.    Subject Matter Jurisdiction

Union argues that the court lacks subject matter jurisdiction over the present action based on the doctrines of ripeness and mootness.[2]  Based on the following, the court disagrees.

///

///

---

[2]  Union also contends that the court lacks subject matter jurisdiction because Plaintiff has failed to exhaust his available remedies.  Union does not dispute that Plaintiff has exhausted Union's internal grievance procedures, but argues that Plaintiff has failed to exhaust the arbitration procedures provided in the CBA.  Union's Reply 8; Union's Mot. 16-18.  "Generally, employees must exhaust contractual grievance procedures before bringing an action against the employer for breach of the collective bargaining agreement" and "[t]his requirement applies with equal force to claims brought against a union for breach of the duty of fair representation." *Croston v. Burlington N. R.R. Co.*, 999 F.2d 381, 385-86 (9th Cir. 1993).  Exhaustion is excused, however, if an employee can show that failure to exhaust is a result of a union's breach of the duty of representation.  *Vaca v. Sipes*, 386 U.S. 171, 185, 190-191 (1967).  Because Plaintiff attempts to show that exhaustion is met or excused, the court addresses the duty of fair representation claim on the merits in the section on summary judgment.

### 1.      Ripeness

Union argues that Plaintiff's duty of fair representation claim will not ripen until the arbitrator issues an award.  Union's Mot. 19.  In opposition, Plaintiff contends that his claim ripened on December 22, 2008 when Union advised him that no further action would be taken concerning Plaintiff's grievance.  Pl.'s Opp'n 5.

The ripeness doctrine prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  "Either a cause of action has accrued, so it is ripe, or it has not yet accrued, so the complaint fails to state a claim upon which relief can be granted."  *Gemtel Corp.*, 23 F.3d at 1545.

A breach of the duty of fair representation claim accrues "when an employee knows or should know of the alleged breach of duty."  *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).  When determining accrual, "[t]he simplest case is one where a union decides not to file a grievance; the cause of action generally accrues when the employee learns or should have learned of the union's decision."  *Id.*; *see also Zuniga v. United Can Co. & Driver-Salesmen, Produce Workers, & Helpers, Local 588, Retail Delivery Drivers*, 812 F.2d 443, 446-47 (9th Cir. 1987) (finding that appeal by employee and his lawyer did not

12

change the date of accrual from the union's initial letter declining to pursue

arbitration).

        Applying these principles, the court finds that Plaintiff's cause of

action accrued on December 22, 2008 when Union notified Plaintiff that "no

further action will be taken." *See* Union's Ex. 11.  When Union informed Plaintiff

that it would not pursue his grievance to arbitration, Plaintiff learned of the

circumstances now central to his breach of the duty of fair representation claim.

Plaintiff's informal appeals for reconsideration and Union's later decision to

rebuke its December 22, 2008 decision do not change the accrual date.  *See*

*Galindo*, 793 F.2d at 1509.  To hold otherwise would yield an inequitable result by

rendering the statute of limitations period unclear[3] or by allowing an employee to

prolong the accrual date indefinitely by continuing to ask for reconsideration.  In

this case, Plaintiff had no means of knowing whether his requests for

reconsideration would be effective; indeed, Union decided to pursue arbitration

only after Plaintiff filed his Complaint.  As a result, the court finds December 22,

2008 to be the accrual date and the resulting claim to be ripe.  *See Gemtel Corp.*,

---

[3] Plaintiff's duty of fair representation claim is subject to a six-month statute of
limitations.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983).  The statute of
limitations started to run when Union mailed the December 22, 2008 letter notifying Plaintiff
that "no further action will be taken."  Union's Ex. 11.  Plaintiff filed his Complaint on June 18,
2009, four days before the statute of limitations period elapsed and seven days prior to Union's
notice of arbitration.

23 F.3d at 1545.

In opposition, Union relies on *Whittle v. Local 641, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 56 F.3d 487 (3rd Cir. 1995), which found that an employee's duty of fair representation claim would not accrue until the parties completed arbitration. *Whittle*, 56 F.3d at 490.  *Whittle* is not binding authority on this court, however, and, in any event, is distinguishable on its facts.  *Whittle* relied in part on the fact that the union pursued the employee's claim through arbitration without delay.  *Id*. In the present case, Plaintiff attempted to pursue his claim through the CBA procedures before filing suit, Union delayed seeking arbitration for over a year after Plaintiff's termination, and Union only decided to pursue arbitration after this federal suit was filed.  As a result, the accrual holding in *Whittle* is uninformative to the court's ripeness inquiry in this case.[4]

In sum, the court finds that Plaintiff's claims are ripe.

///

///

///

---

[4]  Union also asserts that even if Plaintiff's claim initially ripened on December 22, 2008, that claim is no longer ripe because the parties are now proceeding to arbitration.  Union's Mot. 21.  This argument that a justiciable controversy no longer exists is better evaluated as a mootness argument.  As such, the court addresses it below.

### 2.      *Mootness*

Union argues that Plaintiff's Complaint became moot when Union filed for arbitration and, as a result, the court should dismiss for lack of jurisdiction. *Id.*

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Davis*, 440 U.S. at 631 (citations and quotations omitted).  In a mootness inquiry, "[t]he basic question is whether there exists a present controversy as to which effective relief can be granted." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A case becomes moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631 (citations omitted).  "The burden of demonstrating mootness is a heavy one." *Id.*

Union has failed to present evidence -- and thus meet its "heavy burden" -- that an arbitration award would fully compensate Plaintiff for all of his losses. *See id.*  In short, the mere scheduling of arbitration is not a form of interim relief that has "completely and irrevocably eradicated the effects of the alleged violation." *See id.*  As a result, Plaintiff's claims are not moot. *See id.*

**B.**     **Motion for Summary Judgment**[5]

**1.**     *Rule 56(f)*

Before addressing the merits of Union's Motion, Plaintiff raises

incomplete discovery as a preliminary matter under Rule 56(f).  Pl.'s Opp'n 29-30.

Plaintiff argues that summary judgment should be denied as premature because

Plaintiff has had insufficient time to undertake and complete discovery.

Pursuant to Federal Rule of Civil Procedure 56(f):

If a party opposing the motions shows by affidavits that, for
specified reasons, it cannot present facts essential to justify its
opposition, the court may:
(1) deny the motion;
(2) order a continuance to enable affidavit to be obtained,
depositions to be taken, or other discovery to be
undertaken; or
(3) issue any other just order.

"A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit

the specific facts that further discovery would reveal, and explain why those facts

would preclude summary judgment." *Tatum v. City & County of S.F.*, 441 F.3d

1090, 1100 (9th Cir. 2006).  "Under Rule 56(f), an opposing party must make clear

what information is sought and how it would preclude summary judgment."

*Garrett v. City & County of S.F.*, 818 F.2d 1515, 1518 (9th Cir. 1987).  "Failure to

---

[5]  Union moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  Because the court finds that Union is entitled to summary judgment, it does not reach the motion to dismiss.

comply with the requirements of Rule 56(f) is a proper ground for denying

discovery and proceeding to summary judgment." *Brae Transp., Inc. v. Coopers &*

*Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986); *In re Silicon Graphics Inc. Sec.*

*Litig.*, 183 F.3d 970, 989 (9th Cir. 1999) (finding that failing to file the required

Rule 56(f) affidavit detailing with particularity the information sought was fatal to

request for further discovery); *see also Tatum*, 441 F.3d at 1100 (9th Cir. 2006)

(finding that an attorney declaration was insufficient to support a Rule 56(f)

continuance where declaration failed to specify specific facts to be discovered or

explain how a continuance would allow the party to produce evidence precluding

summary judgment).

   Plaintiff's arguments do not meet the requirements of Rule 56(f).

Plaintiff's Opposition and attorney Wayson Chow's affidavit state only that

Plaintiff has not completed discovery.  Pl.'s Opp'n 29-30; Chow Decl. ¶ 7.  For

example, the affidavit states that "insufficient time has passed [] to facilitate the

exchange of relevant and material discovery, evidence, documents, oral depositions

of material parties and witnesses, interrogatories and requests for admission

concerning Union's breach of its duty of fair representation towards Plaintiff."

Chow Decl. ¶ 7.  These generalized statements fall short of meeting the specificity

standards of Rule 56(f).  Plaintiff fails to identify "the specific facts that further

discovery would reveal, and explain why those facts would preclude summary judgment." *See Tatum*, 441 F.3d at 1100; *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 989.  Accordingly, the court DENIES Plaintiff's Rule 56(f) request to postpone consideration of Union's motion for summary judgment.

### 2. *Rule 56(c)*

Union argues that it is entitled to summary judgment because there are no genuine issues of material fact on Plaintiff's duty of fair representation claim. The court agrees.

### a. *Duty of fair representation framework*

The duty of fair representation is a union's "statutory obligation to serve the interests of all [union] members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177 (citation omitted).  A union must exercise special care in the discharge context because discharges are the most serious sanction an employer can impose. *Tenorio v. N.L.R.B.*, 680 F.2d 598, 602 (9th Cir. 1982) (citation omitted).

To determine if a union has breached its duty of fair representation, courts must first assess whether the union's alleged breach involved a ministerial or judgmental act. *Wellman v. Writers Guild of Am., W., Inc.*, 146 F.3d 666, 670

(9th Cir. 1998). If the union's conduct was ministerial, the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith. *Id*. If the union's conduct was an act of judgment, however, the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith, and not if the conduct was merely arbitrary. *Id*. In no case can a plaintiff recover for a union's simple negligence. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 376 (1990).

A union's decision not to pursue arbitration of a grievance it determines lacks merit is an act of judgment. *Stevens v. Moore Bus. Forms, Inc.*, 18 F.3d 1443, 1448 (9th Cir. 1994). Generally, too, a union's decision about how to process a grievance is an act of judgment. *Wellman*, 146 F.3d at 671 (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985)). The Ninth Circuit has "long afforded unions a reasonable range of discretion in determining how best to handle grievances, and [it] will seldom find a breach of duty if a union evaluates and investigates a claim and determines it to be without merit." *Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1380 (9th Cir. 1995) (citation omitted). *Wellman* explains the standard of review of a union's handling of a grievance:

> [T]o be sure that the union is employing some principled way of screening the meritorious grievances from the meritless ones, we have held that "a union must conduct some minimal investigation of grievances brought to its

19

> attention." [*Tenorio*, 680 F.2d at 601].  Consequently,
> when a union member brings a meritorious grievance, the
> union's decision to ignore that grievance or to process it
> in a perfunctory manner is a ministerial action that we
> will overturn if it is arbitrary, discriminatory, or
> performed in bad faith.  *Peters*, 931 F.2d at 539-40.  But
> we will not find that the union has exercised its duties
> perfunctorily unless it has treated the union member's
> claim so lightly as to suggest an "egregious disregard" of
> her rights.  *Stevens*, 18 F.3d at 1448 (citing *Tenorio*, 680
> F.2d at 601).

*Id*.

When examining a union's act of judgment, a plaintiff seeking to prove discriminatory conduct on the part of the union must present "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971) (internal quotations omitted).  In order to establish that a union acted in bad faith, a plaintiff must introduce "substantial evidence of fraud, deceitful action or dishonest conduct" on the part of the union.  *Id*. at 299.

///

///

///

///

20

b.      *Duty of fair representation application*

As an initial manner, the court finds that Union's processing of

Plaintiff's grievance and decision not to pursue arbitration are both acts of

judgment.[6]

Union exercised discretion in its handling of Plaintiff's grievance by

(1) having Union representative Figueroa speak with Plaintiff on May 8, 2008

about Plaintiff's work activities on May 6, 2008; (2) filing a formal grievance

against HMC; (3) requesting information from HMC on May 9, 2008 relating to

Plaintiff's suspension, information relating to HMC's investigation, a copy of

HMC's house rules/standards of conduct, and Plaintiff's personnel file;

(4) seeking suspension of the arbitration time limits set by the CBA in order to

extend its time for review; (5) requesting additional information from HMC on

October 8, 2008; and (6) reviewing the responses provided by HMC.  Wong Decl.

¶ 7; Figueroa Decl. ¶ 4; Union's SMF ¶¶ 8, 13, & 15.  In so doing, Union satisfied

its duty to "conduct some minimal investigation."  *Tenorio*, 680 F.2d at 601.

Further, there is no evidence that Union treated Plaintiff's "claim so lightly as to

suggest an egregious disregard" of Plaintiff's rights.  *Wellman*, 146 F.3d at 671

---

[6] Plaintiff ignores the different standards applicable to a union's ministerial versus judgmental acts and, indeed, cites caselaw predating the Ninth Circuit's recognition that a heightened review standard applies when a union exercises its judgment.  Perhaps as a result, Plaintiff fails to show or even argue that Union's acts were ministerial and not judgmental.

(citations and quotations omitted).  *Cf. Eichelberger v. N.L.R.B.*, 765 F.2d 851, 857

n.10 (9th Cir. 1985) (finding that a union satisfied its duty to investigate when the

union's president read the grievant's letter several times).

Likewise, Union exercised its judgment in initially declining to pursue

arbitration.  Union reviewed the information provided by HMC and, on the basis of

this information, determined that it had insufficient proof of a violation of the

CBA.  Union's SMF ¶ 15.  As a result, Union decided not to pursue arbitration.  *Id.*

¶ 16.  This review and decision process is unquestionably an act of judgment and

not a ministerial act.  *Stevens*, 18 F.3d at 1448 (holding that a union's decision not

to pursue arbitration when the union has determined that a grievance lacks merit is

an act of judgment).

Because Union's complained of actions in this case concern Union's

acts of judgment, Plaintiff must do more than show that Union acted arbitrarily --

he must show that Union's conduct was discriminatory or in bad faith.  *Wellman*,

146 F.3d at 671.  Even when viewed in the light most favorable to Plaintiff, none

of the evidence suggests that Union acted in a discriminatory way that was

"intentional, severe, and unrelated to legitimate union objectives."  *See Lockridge*,

403 U.S. at 301.  Nor has Plaintiff pointed to any evidence suggesting the "fraud,

deceitful action or dishonest conduct" that would be necessary to prove that Union acted in bad faith.  *See id.* at 299.

Indeed, the evidence presented suggests that Union satisfied its duty of fair representation by meeting with Plaintiff, repeatedly requesting information from HMC, reviewing this information, and ultimately agreeing to meet with Plaintiff on May 14, 2009 to reconsider its decision not to arbitrate.  Wong Decl. ¶ 7; Figueroa Decl. ¶ 4; Union's SMF ¶¶ 8, 13, 15 & 18.  The evidence demonstrates that Union investigated and evaluated Plaintiff's claim in a good faith, nondiscriminatory manner.  As a result, Union is entitled to summary judgment on the breach of duty of fair representation claim.

In opposition, Plaintiff presents five "questions" that he alleges remain unanswered in this case and preclude summary judgment.  Pl.'s Opp'n 27. None of Plaintiff's questions, however, satisfies Plaintiff's burden to "do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita*, 475 U.S. at 586-87 (1986) (citation and internal quotation signals omitted).  Plaintiff has not presented the court with any specific facts in support of his claim and, on that basis alone, Plaintiff has not satisfied his burden under Rule 56(c).

Further, even upon reviewing Plaintiff's "questions," the court finds that Plaintiff raises no genuine issues for trial.  First, Plaintiff contends that an issue of material fact exists concerning whether Union adequately investigated, obtained, and submitted favorable witness statements and evidence to challenge HMC's termination of Plaintiff.  Pl.'s Opp'n 27.  As discussed above, Union's duty to investigate is a minimal one, *Tenorio*, 680 F.2d at 601, and Union established that it satisfied that duty by speaking with Plaintiff on May 8, 2008, requesting information from HMC, and reviewing the information provided by HMC.  Wong Decl. ¶ 7; Figueroa Decl. ¶ 4; Union's SMF ¶¶ 8, 13 & 15.

Plaintiff also questions whether Union exhibited "reckless disregard" or "egregious disregard" for Plaintiff's rights under the CBA.  Pl.'s Opp'n 27.  Again, even when viewing the facts in the light most favorable to Plaintiff, Union's multi-step investigation of Plaintiff's complaint shows that Union did not treat Plaintiff's "claim so lightly as to suggest an egregious disregard" for Plaintiff's rights.  *Wellman*, 146 F.3d at 671 (citations and quotations omitted).

Finally, Plaintiff's remaining "questions" are irrelevant to the court's inquiry on summary judgment.  Plaintiff's question asking whether Union arbitrarily ignored and/or processed Plaintiff's grievance applies the wrong standard -- because Union exercised its judgment, the question is whether these

24

acts of judgment were discriminatory or in bad faith, not merely arbitrary.

Similarly, Plaintiff's question concerning exhaustion is not material because

further evidence on exhaustion would not enable a reasonable factfinder to

conclude that Union breached its duty of fair representation.  Finally, Plaintiff's

question concerning the adequacy of the remedies available to Plaintiff is unclear

and does not point to a material fact raising a genuine issue for trial.[7]

       In sum, there is no genuine issue of fact that Union breached its duty

of fair representation under the facts and circumstances of Union's handling of

Plaintiff's grievance or its initial decision not to pursue arbitration.

///

///

///

///

///

///

///

---

[7] Plaintiff also raises an evidentiary objection to Union's exhibits.  At the hearing, Plaintiff indicated that he objected only to Union's Exhibits 2A, 2B, and 2C, which he argued were unauthenticated and inadmissible hearsay.  Union authenticated these exhibits in Figueroa's Supplemental Declaration.  Figueroa Suppl. Decl. ¶ 4.  Further, the court does not consider Union Exhibits 2A, 2B, or 2C for the truth of the matter asserted.

## V.  **CONCLUSION**

For the reasons discussed above, the court DENIES Union's Motion to Dismiss and GRANTS Union's Motion for Summary Judgment.  As a result of this Order, Count II against Union is dismissed on summary judgment.  Count I (breach of contract) remains against HMC.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 14, 2009.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Wong v. Haw. Med. Ctr.-W. LLC, formerly known as St. Francis Med. Ctr.-W., et* al., Civ. No. 09-00279 JMS/LEK; Order Denying Laborers' International Union of North America, Local 368, AFL-CIO's Motion to Dismiss and Granting its Motion for Summary Judgment